```
                  THE UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF NEW JERSEY
```

|  |  |
|---|---|
| RICHARD SWEETEN and KAREN SWEETEN, | HON. JEROME B. SIMANDLE |
|  | Civil No. 04-3512 (JBS) |
| Plaintiffs, |  |
| v. | **MEMORANDUM OPINION** |
| MIDDLE TOWNSHIP, MIDDLE TOWNSHIP POLICE DEPARTMENT, and GREGG TAYLOR |  |
| Defendants. |  |

**SIMANDLE**, District Judge:

   This matter is before the Court on the motion of Defendants Middle Township and the Middle Township Police Department (the "Middle Defendants") to bar the admission at trial of an audiotape recording [Docket Item 46]. THIS COURT FINDS AS FOLLOWS:

   1. Plaintiffs filed the instant lawsuit on July 22, 2004, alleging claims based on federal and New Jersey anti-wiretapping statutes and New Jersey tort law. The plaintiffs' anti-wiretapping claims allege that Defendant Taylor, who previously served as a detective with the Middle Township Police Department ("MTPD"), used a civilian named Tamala M. Marks as an agent to monitor and record telephone conversations between Mr. Sweeten and his friends.

   2. On January 22, 2007, following Defendants' deposition of Ms. Marks, Ms. Marks delivered to Plaintiffs' counsel, Mr. Robert

J. Campbell, Esq., an audiotape containing a recording of a conversation between Ms. Marks and then-Detective Scott Webster of the MTPD.  At the time, Mr. Campbell did not disclose information about the tape or its contents to defense counsel because he first sought "to evaluate the evidential value of the tape."  (Pls.' Opp'n Br. 2.)  To this end, on January 25, 2007, Mr. Campbell directed a subpoena to the Cape May County Prosecutor's Office (the "Prosecutor's Office"), where the original version of the tape was apparently located, seeking production of a copy of the original tape "in order to establish an authenticating history of the tape" he had received from Ms. Marks.  (Id.)

3.  On January 26, 2007, Mr. Campbell contacted the Middle Defendants' counsel, Mr. James P. Savio, Esq., in order to arrange to depose Captain Webster.[1]  Captain Webster was deposed on March 13, 2007.  At the time Captain Webster was deposed, Mr. Campbell states that he "had not intended on utilizing the tape provided by Tamala Marks and consequently did not supply it to Defense Counsel."  (Id.)  On March 29, 2007, Mr. Campbell received the Prosecutor's Office's response to his subpoena and confirmed that the contents of the tapes provided by Ms. Marks

---

[1]  The parties' submissions refer alternatively to "Detective Webster" and "Captain Webster."  It is the Court's understanding that the initial recording was made when Webster was a detective, but that he is now a captain.  For the sake of consistency, the Court will use "Captain Webster" in its Opinion.

and the Prosecutor's Office were identical.  Mr. Campbell subsequently sent copies of the tape received from the Prosecutor's Office to defense counsel.

4.  Mr. Savio first learned about the existence of the tape on March 29, 2007, after the deposition of Captain Webster was complete.  On April 2, 2007, Mr. Savio wrote to the Hon. Ann Marie Donio, United States Magistrate Judge, objecting to Plaintiffs' use of the tape recording; Mr. Savio reiterated these concerns at an April 12, 2007 scheduling conference before Judge Donio.  On April 18, 2007, the Middle Defendants filed the instant motion to "preclude the plaintiff from using the audiotape of a communication between Captain Scott Webster and Tamala Marks for any purpose at the time of trial."  (Savio Cert. ¶ 15.)  Plaintiffs have opposed the motion.  In their opposition brief, Plaintiffs state that they will not seek to introduce the tape received from Ms. Marks into evidence; that they do intend to use the tape received from the Prosecutor's Office; but that they only intend to use that tape for impeachment purposes at trial "in the event that Scott Web[st]er testifies inconsistently with the content of the audio tape."  (Pls.' Opp'n Br. 3.)

5.  Under Federal Rule of Civil Procedure 26(a)(1)(A),

> a party must, without awaiting a discovery request, provide to the other parties . . . a copy – or a description by category and location – of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support

>its claims or defenses, <u>unless the use would be solely for impeachment</u>.

F. R. Civ. P. 26(a)(1)(A) (emphasis added).  Rule 26(e) imposes a related duty on the disclosing party to

>supplement or correct its disclosure . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.

F. R. Civ. P. 26(e).  Rule 37 imposes penalties on parties that fail to comply with these mandatory disclosure requirements.  Specifically, under Rule 37(c)(1),

>if a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

F. R. Civ. P. 37(c)(1).

6.  In <u>Hayes v. Cha</u>, 338 F. Supp. 2d 470 (D.N.J. 2004), the court explained that Rule 26(a)(1)(A)'s mandatory disclosure exception for evidence for which "the use would be solely for impeachment" has been subjected to different interpretations by different courts.  "[In <u>Klonoski v. Mahlab</u>, 156 F.3d 255 (1st Cir. 1998), the] First Circuit read solely to mean that the evidence could be used for nothing other than impeachment, that is, that the evidence can have no substantive value."  <u>Cha</u>, 338 F. Supp. 2d at 503.  By contrast, the Fourth and Seventh Circuits

"construed 'solely' to mean that the evidence itself was offered only as impeachment and not in the offeror's case-in-chief." Id. (citing Halbasch v. Med-Data, Inc., 192 F.R.D. 641, 649 (D.Or. 2000) (in turn citing DeBiasio v. Illinois Cent. R.R, 52 F.3d 678 (7th Cir. 1995), and Jeffries v. Pacific Indemnity Co., No. 97-1398, 1997 WL 774459 (4th Cir. Dec.17, 1997) (unpublished))). The court in Cha reasoned that

> [a] more balanced reading of the exclusion would take into consideration fairness factors akin to those noted in the Konstantopoulos case, namely (1) the prejudice or surprise in fact of the party against whom the information was offered, (2) the ability of that party to cure the prejudice, and (3) the bad faith or wilfulness in withholding the information. In short, the rule should be applied as an aid in the truth-seeking process . . . .

Cha, 338 F. Supp. 2d at 504 (citing Konstantopoulos v. Westvaco Corp., 112 F.3d 710, 719 (3d Cir. 1997)).

7.  This Court agrees with the reasoning of the court in Cha. Under the factors listed in Cha, the plaintiffs' proposed use of the tape is exclusively for impeachment purposes, and supplemental disclosure was not required under Rule 26(e). Accordingly, the Middle Defendants' motion to preclude Plaintiffs from using the tape at trial will be denied.[2]

---

[2] The Court's analysis is shaped by Plaintiffs' statement that they only intend to use to tape for impeachment purposes. Obviously, Plaintiffs' initial and supplemental disclosure obligations for non-impeachment materials under Rule 26 are more rigorous. Because Plaintiffs represent that they only seek to use the tape for impeachment purposes, the Court confines its analysis to this issue.

8.  In this case, the "prejudice or surprise in fact of the party against whom the information was offered" is relatively minimal because it is easily cured.  Mr. Savio was, of course, surprised to learn of the existence of the tape, and he has voiced concern over the fact that Captain Webster might be "put in a position of having to explain any arguable inconsistency between the deposition and the audiotape."  (Def. Middle's Reply Br. 4.)  However, unlike <u>Cha</u>, where the defendant was surprised by the introduction of the evidence at trial, the defendants were made aware of the existence and contents of the tape well in advance of trial, which has not yet been scheduled.

9.  Any prejudice created by the fact that Captain Webster was deposed without having first heard the recording of his conversation can easily be mitigated by Defendants because "the defendant[s will have] . . . an opportunity to cure the prejudice through re-direct."  <u>Cha</u>, 338 F. Supp. 2d at 505.  The Middle Defendants raise the concern that there could be inconsistencies between Captain Webster's deposition testimony and his recorded conversation with Ms. Marks because the events about which Captain Webster testified at his deposition took place ten or eleven years earlier.  However, the defendants are free to question Captain Webster about the chronological remoteness of the events in question on redirect in order to help explain these inconsistencies in the event that Plaintiffs seek to impeach

Captain Webster's testimony using the tape recording.  The first two factors identified in Cha, therefore, weigh against the Middle Defendants' motion to preclude the tape.

10.  The Court finds that the final factor – whether the withholding party acted in bad faith – likewise does not require that Plaintiffs be precluded from using the tape for impeachment purposes.  It is true, as the Middle Defendants note, that the period of more than two months between Mr. Campbell's receipt of the tape from Ms. Marks and providing notice to Defendants while Mr. Campbell evaluated "the evidential value of the tape" would not justify the failure to disclose evidence for non-impeachment purposes under Rule 26.  See F. R. Civ. P. 26(a)(1)(E) ("A party must make its initial disclosures based on the information then reasonably available to it.  A party is not excused from making its disclosures because it has not fully investigated the case . . . .").  Yet this alone does not demonstrate that Mr. Campbell acted in bad faith.  Indeed, the evidence submitted by Mr. Campbell indicates that as soon as he received the Prosecutor's Office's response to his subpoena, he made the tape available to the defendants. (Pls.' Opp'n Br. Ex. 2.)  The Court finds that Mr. Campbell's two-month inquiry into the evidential value of the tape, though not necessarily performed with dispatch, has not been shown to be the product of bad faith.

11.  In short, the use of the tape for impeachment purposes carries little risk of prejudice, the prejudice itself is easily cured, and the delay in disclosure was not the result of bad faith.  Bearing in mind that Rule 26(a)(1)(A)'s mandatory disclosure exception for evidence for impeachment-only evidence "should be applied as an aid in the truth-seeking process," Cha, 338 F. Supp. 2d at 504, the Court finds that Plaintiffs should not be precluded from using the tape for impeachment purposes only at trial.  Accordingly, the Middle Defendants' motion to preclude the audiotape will be denied.

**December 14, 2007**             **s/ Jerome B. Simandle**
Date                                Jerome B. Simandle
                                      U.S. District Judge